7L 207
11L 560
14L 576
16L 172
16L 255
16L 450
16L 706
2p1 610

P. D. BEECHER AND WIFE *v.* RALPH HICKS *et al.*

1. EJECTMENT. *Outstanding title. Tax title.* In ejectment, a *prima facie* case of an outstanding tax title is not made out by a deed from a municipal corporation to a third person, reciting that its tax collector conveyed the land to it for the consideration specified in the conveyance.

2. HUSBAND. *Not entitled to curtesy. When.* Under a conveyance of land to a married woman to have and to hold to her for her sole and separate use, and to the children upon her body begotten by her then husband, the husband is not entitled to an estate as tenant by curtesy, the wife leaving such children surviving.

---

FROM SHELBY.

---

Appeal in error from the Circuit Court of Shelby county.    C. W. HEISKELL, J.

BIGELOW & HILL for Beecher.

W. M. RANDOLPH for Hicks.

COOPER, J., delivered the opinion of the court.

In this action of ejectment, the plaintiffs below, who are the defendants in error, made out a connected chain of title, and the plaintiffs in error relied solely upon an outstanding tax title in a third person, and upon the existence of an estate by curtesy in the father of the defendants in error.

The only evidence introduced to sustain the first of these grounds was a deed executed by the city of Memphis to E. R. Knight, conveying to him the lot in dispute. This instrument commences with the recital that by a deed of record in the register's office, " Felix W. Robertson, as tax collector of the city of Memphis, did convey to the city of Memphis, for the considerations specified therein, the following property," being the property conveyed by the city to Knight. It is assigned as error that the trial judge, upon this evidence, refused to charge the jury that the defendants had made out a *prima facie* case of an outstanding tax title. No argument has been submitted in support of this contention. The deed itself does not mention the tax sale, or any facts which, if true, would show a valid tax sale of the lot. There is clearly no error in the action of the court on this point.

The plaintiffs below claimed title to the lot in controversy under a deed made to their mother by Jeremiah Woodworth, on September 4, 1855. That instrument recites that it is entered into by and between Jeremiah Woodworth of the first part, and Sarah Catherine Hicks, wife of James Franklin Hicks, of the second part, and that Woodworth, for the considerations named, sells and conveys " to the said Sarah Catherine Hicks, wife of James Franklin Hicks, the following described lot," setting it out, " to have and to hold the above-mentioned lot and bargained premises, together with all the · improvements, etc., unto her the said Sarah Catherine Hicks, wife of James Franklin Hicks, for her sole and separate use and benefit, and free

from all the debts, liabilities, and contracts of her said husband, and to the children of the said Catherine upon her body begotten by her said husband, James Franklin Hicks." Then follows a covenant of warranty of title made by the grantor "with the said party of the second part, her heirs and assigns."

At the time of the execution of this deed, the said James Franklin Hicks had several children then living begotten of the body of the said Sarah Catherine, his wife. Of these children, all died under age, intestate, and without ever having married, except the defendant in error, Ralph Hicks. After the execution of the deed, three other children were born of the said Sarah Catherine by James Franklin Hicks, all of whom joined with the said Ralph Hicks in bringing this action. Sarah, the mother, died before the suit was commenced, but the father is still living. Upon these facts, the point is made by the plaintiffs in error that the father has a life estate in the lot in controversy, as tenant by the curtesy, and is entitled to the possession of the land by virtue of this outstanding title, instead of the children.

A conveyance of land directly to a woman and her children without more, she then having children, would vest the title in her and her children equally: Co. Lit., 3a, 9a; Perkins, sec. 54; *Hickman* v. *Quinn,* 6 Yer., 96; *Grimes* v. *Orrand,* 2 Heis., 98; *Barnes* v. *Vickers,* 3 Baxt., 370; *Stroman* v. *Rotterbury,* 4 Des., 268; *Holeman* v. *Fort,* 3 Strobh., 74. And, it seems, no title will vest at law in children thereafter born, although the instrument may declare the grantor's in-

14—VOL. 7.

tent that the afterborn children shall take: *Lillard* v. *Rucker*, 9 Yer., 64; *Newsom* v. *Thompson*, 2 Ired., 277. But such children would take as beneficiaries under a trust by deed: *Gray* v. *Hays*, 7 Hum., 588; *Read* v. *Fite*, 8 Hum., 328; *Ragsdale* v. *Mabry*, 8 Baxt., 300. So, under a trust by will: *Turner* v. *Ivie*, 5 Heis., 222; *Bowers* v. *Bowers*, 4 Heis., 293. And, perhaps, the living grantees under such a deed expressly providing for afterborn children would hold the legal title in trust for themselves and such children: *Moreau* v. *Saffarans*, 3 Sneed, 595; *Holmes* v. *Jarrett*, 7 Heis., 506; *Jackson* v. *Sisson*, 2 Johns. Ch., 321; *Schumpert* v. *Pinson*, 55 Mass., 348. And a very slight indication of an intention that the children should not take jointly with the mother will suffice to give the estate to the mother for life, with remainder to her children, as well in the case of a deed (*Moore* v. *Simmons*, 2 Head, 546) as of a will: *Bunch* v. *Hardy*, 3 Lea, 543; *Noe* v. *Miller*, 4 Stew. Ch., 234. If the conveyance be expressly to the mother for life, and after her death to her children, the children born during the life estate would all take, the remainder vesting as they came into being, and opening to let in those born afterwards: *Hughes* v. *Cannon*, 2 Hum., 589; *Haywood* v. *Moore*, 2 Hum., 584; *Harris* v. *Alderson*, 4 Sneed, 250; *Bostick* v. *Winter*, 1 Sneed, 538.

The deed conveys the lot in controversy to Sarah Catherine Hicks to have and to hold unto her, for her sole and separate use, " and to the children of the said Sarah Catherine upon her body begotten by her said husband, James Franklin Hicks." 'At common law,

Beecher *v.* Hicks.

the language of this deed would not have passed the fee for want of words of inheritance: *Hunter* v. *Bryan,* 5 Hum., 47; *McKinney* v. *Starks,* 6 Heis., 284. The deed might, however, have operated as a conveyance in fee by way of estoppel by virtue of the covenant of warranty with the grantee, "her heirs and assigns." But by the act of 1851, ch. 33, carried into the Code sec. 2006, it is now provided that: "The term heirs, or other words of inheritance, shall not be requisite to create or convey an estate in fee; and every grant or devise of real estate, or any interest therein, shall pass all the estate or interest of the grantor or devisor, unless the intent to pass a less estate or interest shall appear by express terms, or be necessarily implied in the terms of the instrument." Under this statute, the words "sell and convey to Sarah Catharine Hicks" would, unless there was something in the instrument which "necessarily implied" the contrary, pass all the estate of the grantor. But the statute plainly provides that the entire "terms of the instrument" may be looked to in order to ascertain the estate actually intended to be vested in the grantees.

Under the old system of conveyancing, the office of the premises of a deed was to rightly name the feoffor and feoffee, and to describe the land to be conveyed, and the office of the *habendum* was to name again the feoffee, and to limit the certainty of the estate: Co. Lit., 6*a.* If the *habendum* was repugnant to the premises, either in the quantity of the thing conveyed, the estate or the grantee, it was void: Co. Lit., 299 *a;* 8 Rep., 56 *b.; Hafner* v. *Irwin,* 4 Dev. & B.,

435. But the *habendum* might determine the estate granted, enlarge, explain or qualify the premises, and might name a new grantee if the estate given was not immediate, but by way of remainder: *Meredith* v. *Owen*, 2 Head, 226. In modern times, the inclination of the courts is to look to the whole of the instrument, without reference to formal divisions, in order to ascertain the intention of the parties, and not to allow technical rules to override the intent: *Id.; Cholmondeley* v. *Clinton*, 2 J. & W., 91; *Kirk* v. *Burkholtz*, 3 Tenn. Ch., 425.

Tested by these rules, the plain object of the grantor of the deed in controversy was to carry the property to Sarah Catherine Hicks, for her sole and separate use, and to her children, not as a class to take in perpetual succession, but as direct objects of the grant. This intention may be effectuated by treating the conveyance as being to the mother in trust for herself and her children, or as giving her directly an estate for life with remainder to her children. In either view, as the conveyance is to her, "and to the children" upon her body begotten by her then husband, meaning plainly all of the children that might thus be begotten, she would take only an estate for life with remainder to her children: *Ragsdale* v. *Mabry*, 8 Baxt., 300; *Turner* v. *Ivie*, 5 Heis., 222.

The argument on behalf of the plaintiffs in error concedes that the husband's estate by curtesy depends upon the wife's taking the absolute estate, either directly by holding the *habendum* as repugnant to the premises, or indirectly by construing the *habendum* as

creating an estate tail, which is turned into a fee by the act of 1784, ch. 22, sec. 5, brought into the Code sec. 2007. But, as we have just seen, although the language of the premises taken by itself might carry the fee, yet the statute authorizes the "terms of the instrument" to be looked to in order to ascertain whether a less estate is thereby "necessarily implied." And the same conclusion has been reached by the courts under the modern rules of interpretation. The *habendum* is clearly not repugnant to the premises, but determines the estate granted, and only adds new grantees who take by way of remainder. Looking to the whole instrument, the mother was not entitled to take and does not take a direct fee, unless it be by way of trust, in which case the trust would end when its purpose was accomplished by her death: *Ellis* v. *Fisher*, 3 Sneed, 231.

To create an estate tail there must be the use of technical words designating a class of heirs to take in perpetual succession, or language disclosing a clear intent to that effect: *Middleton* v. *Smith*, 1 Cold., 144; *Wynne* v. *Wynne*, 9 Heis., 308. The word children is usually a word of purchase, requiring strong language to change it into a word of limitation. Not only is no such language found in this deed, but if a word of limitation had been used the context would have required it to be construed as a word of purchase: *Pierce* v. *Ridley*, 1 Baxt., 145.

We are clearly of opinion that the mother did not take a fee in the land, but only a separate life estate, and that on her death the entire estate passed to her

children by the terms of the deed. The husband was, therefore, not entitled to an estate as •tenant by cur- tesy: *Alexander* v. *Miller*, 7 Heis., 81.

There is no error in the judgment, and it must be affirmed.